**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **SENSIVA HEALTH, LLC** | * | **CIVIL ACTION NO. 21-00598** |
| | * | |
| **Versus** | * | **JUDGE GREG GERARD GUIDRY** |
| | * | |
| **UNIVERSAL MEDITECH, INC. and KAREKIN KHATCHADOORIAN** | * | **MAGISTRATE JUDGE MICHAEL NORTH** |
| | * | |
| | * | **JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FILED BY KAREKIN KHATCHADOORIAN AND UNIVERSAL MEDITECH INC.**

Defendant, Karekin Khatchadoorian ("Mr. Khatchadoorian"), respectfully submits this memorandum in support of his Motion to Dismiss for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and alternative Motion to Dismiss for Failure to State a Claim under Federal Rule of Civil Procedure 12(b)(6). Additionally, to the extent the Complaint filed by Plaintiff, Sensiva Health LLC ("Sensiva"), is deemed to have made fraud allegations against Defendant, Universal Meditech Inc. ("UMI"), UMI likewise seeks to dismiss Sensiva's fraud allegations against UMI pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

Sensiva has improperly attempted to bring claims against Mr. Khatchadoorian in his personal capacity arising out of his purported actions in his capacity as the General Manager of UMI. As set forth herein, dismissal is required because Mr. Khatchadoorian is not subject to personal jurisdiction in the courts of Louisiana. Alternatively, even if this Court had personal jurisdiction over Mr. Khatchadoorian, Sensiva has failed to state a cause of action for fraud against

[1] It is unclear from Sensiva Health LLC's vague and conclusory fraud allegations whether it seeks to bring a fraud claim against UMI in addition to Mr. Khatchadoorian. The only reference to UMI in Sensiva's fraud allegations is located in paragraph 18 of the complaint: "Along with UMI, Defendant Khatchadoorian is personally liable to Sensiva because he …." Rec. Doc. 1, p.4. Out of an abundance of caution, UMI moves to dismiss any fraud claims brought against UMI to the extent the Court finds any were alleged.

Mr. Khatchadoorian or UMI. Accordingly, Sensiva's claims against Mr. Khatchadoorian in his personal capacity and Sensiva's fraud claims against UMI should be dismissed with prejudice.

## I. Factual Background

### A. Substantive Facts and Statement of the Case

This case arises out of a development agreement entered between UMI and Cormeum Lab Services ("Cormeum") in 2020 where the parties contracted for UMI to manufacture SARS-Cov-2-Antigen Testing Kits (Covid-19 "Test Kits" or Lateral Flow Devices "LFDs"). Under the Agreement Cormeum Lab Services agreed to purchase: 50,000 Test Kits in December 2020, 100,00 Test Kits in January 2021, and 200,000 or more Test Kits in February 2021. To date UMI has produced 80,000 Test Kits that were delivered in January 2021 and accepted by Cormeum for a total purchase price in excess of $300,000.

An additional order of 700,000 Test Kits was placed with UMI on January 28, 2021 for price of $2,100,000. Rec. Doc. 1-1, p.1. For reasons unbeknownst to UMI and Mr. Khatchadoorian, Tarun Jolly, Cormeum's agent that UMI had been negotiating with, requested that the January 28, 2021 order be placed by Sensiva (instead of Cormeum) who ultimately issued the Purchase Order. The Payment schedule was set out as follows:

**PAYMENT SCHEDULE**

| DATE | DEPOSIT / BALANCE | AMOUNT | UNITS AVAILABLE FOR SHIPPING |
|---|---|---|---|
| 02/04/21 | Deposit | $225,000 | - |
| 02/08/21 | Deposit | $300,000 | - |
| 02/11/21 | Deposit | $225,000 | - |
| 02/15/21 | Deposit | $300,000 | - |
| 02/18/21 | Balance | $225,000 | 150,000 |
| 02/22/21 | Balance | $300,000 | 200,000 |
| 02/25/21 | Balance | $225,000 | 150,000 |
| 03/01/21 | Balance | $300,000 | 200,000 |

Sensiva originally agreed to make deposit payments in the amount of $1,050,000 for the Test Kits by February 15, 2021.[2] Sensiva made timely payments pursuant to the schedule on February 4, 2021 and February 8, 2021. However, on February 10, 2021 UMI was informed by Tarun Jolly: "The FDA application [for an Emergency Use Authorization] is not moving forward, so the investor wants to make sure we get the product and sell it before he wants to put in more money." Mr. Jolly's representations and refusal to make timely payments were in contradiction to Sensiva's Obligations under the Purchase Order. Due to what Sensiva later defined as "interim and temporary unforeseen commercial circumstances" Sensiva stopped making payments and was forced to renege on its original agreement as evidenced in its March 4, 2021 correspondence. Rec. Doc. 1-2. Rather than hold Sensiva in breach of contract, in the spirit of cooperation, UMI attempted to give Sensiva the opportunity to rectify its breach by extending the time period for payment, which Sensiva has still failed to comply with.

Following Sensiva's March 4, 2021 correspondence, on March 12, 2021 a Sensiva representative, Mr. Donavan Blackney, conducted a quality control inspection of the Test Kits and confirmed after the testing was completed that the testing went as planned and he could not and did not point to any areas of concern or flaws with UMI's Test Kits. Thus, UMI was surprised to later receive a series of correspondence from Sensiva and its counsel refusing to make its long overdue payment on the basis that the Test Kits were not in compliance with the specifications.

Sensiva subsequently filed this lawsuit in the midst of the parties' settlement negotiations. Sensiva's lawsuit names UMI and UMI's General Manager, Mr. Khatchadoorian, as defendants. As to Mr. Khatchadoorian, Sensiva makes threadbare and conclusory fraud allegations against Mr.

[2] The development agreement entered between UMI and Cormeum "require[d] a 50% down payment before a Production Order is generated by Universal Meditech Inc. to begin manufacturing of the listed product in this Development Agreement. Once completion of order takes place, the remaining 50% equaling the total 100% shall be paid including shipping costs provided by Cormeum or its clients."

Khatchadoorian without making a single allegation to support a basis for personal jurisdiction over Mr. Khatchadoorian.

**B. Jurisdictional Facts**

Mr. Khatchadoorian is a citizen of the state of California.[3] Mr. Khatchadoorian has never even been to Louisiana much less resided in Louisiana or owned any property in Louisiana.[4] Mr. Khatchadoorian serves as the General Manager of UMI and performs his duties as General Manager from UMI's office located in Fresno, California.[5] All communications that Mr. Khatchadoorian had with the Sensiva were in his capacity as General Manager of UMI.[6] Mr. Khatchadoorian had no contacts with Louisiana in his personal capacity.[7]

**II. Law and Argument**

**A. This Court Lacks Personal Jurisdiction Over Mr. Khatchadoorian.**

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the nonresident. *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999) (citations omitted). A federal court that sits in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the exercise of the federal court's jurisdiction comports with the Constitution's guarantee of due process. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993); *Tidewater Marine, Inc. v. Sanco Int'l, Inc.*, No. Civ. A. 96-1258, 1998 WL 131738, at *2 (E.D. La. Mar. 20, 1998) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)). Because Louisiana's long-arm

[3] Exhibit A, Affidavit of Karekin Khatchadoorian ("Khatchadoorian Aff.") at ¶ 1.
[4] Khatchadoorian Aff. at ¶ 2.
[5] Khatchadoorian Aff. at ¶ 4.
[6] Khatchadoorian Aff. at ¶ 5.
[7] Khatchadoorian Aff. at ¶ 5.

statute extends jurisdiction to the limits allowed by the Constitution, a federal court sitting in Louisiana should determine whether the exercise of personal jurisdiction is consistent with due process under the Constitution. *Tidewater*, 1998 WL 131738, at *2. The due process clause of the Fourteenth Amendment allows a court to exercise personal jurisdiction over a nonresident defendant when "(1) that defendant has established 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Ruston*, 9 F.3d at 418 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A court cannot exercise jurisdiction unless both prongs of this test are satisfied. *Tidewater*, 1998 WL 131738, at *2.

The minimum contacts analysis asks whether the nonresident defendant "purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987); *Tidewater*, 1998 WL 131738, at *3. Courts have recognized two forms of personal jurisdiction under the "minimum contacts" analysis — specific and general:

> A state exercises "specific jurisdiction" over a non-resident defendant when the lawsuit arises from or relates to the defendant's contact with the forum state. A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted. In contrast, when the act or transaction being sued upon is unrelated to the defendant's contacts with the forum state, personal jurisdiction does not exist unless the defendant has sufficient "continuous and systematic contacts" with the forum state to support an exercise of "general jurisdiction."

*Ruston*, 9 F.3d at 418-19 (citations omitted).

**1. Specific Jurisdiction Does Not Exist Here**

Specific jurisdiction does not exist over Mr. Khatchadoorian in the Eastern District of Louisiana. "A court has specific jurisdiction over a defendant when the plaintiff's cause of action

arises from the defendant's contact with the forum state." *Tidewater,* 1998 WL 131738, at *3 (citing *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). Mr. Khatchadoorian has never even been to Louisiana.[8] Mr. Khatchadoorian's only tangential contact with the state of Louisiana are communications with Cormeum/Sensiva's agents who are located in Louisiana, which were all undertaken in his capacity as the General Manager of UMI, not his personal capacity.[9] Communications with Louisiana residents in his capacity as the agent of UMI cannot form a sufficient basis for a federal court in Louisiana to exercise personal jurisdiction over Mr. Khatchadoorian. Under the fiduciary-shield doctrine, a court cannot exercise personal jurisdiction over an individual based upon activity engaged in as an agent of a corporation. This doctrine:

> shields an individual from jurisdiction that would be based solely on the individual's contacts with the forum made as a fiduciary or agent of the corporation. While the individual might be subject to personal liability for this conduct, the conduct would not form the predicate for the exercise of jurisdiction over the individual. The theoretical underpinning of this doctrine is the notion that it is unfair to force an individual to defend a suit brought against the individual personally in a forum with which the individual's only relevant contacts are acts performed not for his or her own benefit but for the benefit of the employer.

16 James Wm. Moore et al., Moore's Federal Practice, ¶ 108.42[3][b][iii] (3d ed. 2007).

The fiduciary shield doctrine has been recognized by the United States Fifth Circuit. *See Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir. 1985) (noting that the fiduciary-shield doctrine holds that "an individual's transaction of business within the state solely as a corporate

---

[8] Khatchadoorian Aff. at ¶ 2.

[9] Khatchadoorian Aff. at ¶ 5. Moreover, it was Cormeum through its agent who originally reached out to Mr. Khatchadoorian in California; neither Mr. Khatchadoorian nor UMI initiated the communications with Cormeum. Khatchadoorian Aff. at ¶ 6.

officer does not create personal jurisdiction over that individual");[10] *see also Sousa v. Prosser et. al.,* No. 03-2942, 2004 U.S. Dist. LEXIS 12440, *10-11 (E.D. La. July 1, 2004) (recognizing the fiduciary shield doctrine and stating that "personal jurisdiction must be premised on the officer's personal contacts with the forum state" rather than upon acts performed in the officer's corporate capacity); *Estate of Monroe v. Bottle Rock Power Corp.,* No. 03-2682, 2004 WL 737463, *8 (E.D. La. April 2, 2004) (discussing the fiduciary shield doctrine). In the present case, the fiduciary shield doctrine prohibits a finding of personal jurisdiction over Mr. Khatchadoorian in Louisiana based upon the activity he engaged in as an agent of UMI. Rather, an exercise of personal jurisdiction by the court over Mr. Khatchadoorian would require an analysis of acts in Louisiana performed in his personal capacity. *Sousa,* 2004 U.S. Dist. LEXIS 12440 at *11. There simply were none. Accordingly, the Court does not have specific jurisdiction over Mr. Khatchadoorian.

**2. General Jurisdiction Does Not Exist Here.**

Neither does general jurisdiction exist. Mr. Khatchadoorian does not have sufficient continuous and systematic contacts with Louisiana such that anyone can sue him here on any claim. The United States Supreme Court has "made clear that only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). To satisfy this high burden, a defendant's contacts must be "so

[10] The Fifth Circuit has recognized two exceptions to the fiduciary shield doctrine permitting official acts to serve as the basis for personal jurisdiction over a corporate officer. These exceptions occur when (1) the corporation is the "alter ego" of the individual; or (2) the officer allegedly committed an intentional tort or fraud directed at the forum state. *Monroe,* 2004 WL 737463 (citing *Miller v. Am. Gen. Fin. Corp.,* No. Civ. A. 02-0348, 2002 WL 2022536, *12 (E.D. La. Sept. 4, 2002) & *Credit Cheque Corp., v. Zerman,* No. Civ. A. 3:97-CV-1967, 1997 WL 786251, *3 (N.D. Tex. Dec. 11, 1997)). With respect to exception (1), there are no allegations that UMI is the alter ego of Mr. Khatchadoorian. With respect to exception (2), there is no allegation that Mr. Khatchadoorian took any action in Louisiana, and as detailed herein, Sensiva fails to state a cause of action for fraud against Mr. Khatchadoorian. Neither of the exceptions to the fiduciary shield doctrine are applicable here.

continuous and systematic as to render [it] essentially at home in the forum State." *Jacobsen v. Asbestos Corp. Ltd.*, 12-655 (La. App. 5 Cir. 5/30/13), 119 So. 3d 770, 779 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (internal quotation marks omitted).

Mr. Khatchadoorian is domiciled in California and is certainly not "at home" in Louisiana.[11] "Thus, to exercise general jurisdiction here, these facts must yield what the Supreme Court has described as the '**exceptional case**.'" *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 234 (5th Cir. 2016) (emphasis added) (quoting *Daimler*, 134 S. Ct. at 761 n.19). It is "incredibly difficult" to make this exceptional case, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014), and Plaintiff cannot make it here.

As a preliminary matter, Plaintiff's jurisdictional allegations are wholly deficient on their face. The petition does not allege facts sufficient to establish general jurisdiction at all. In fact, the Petition does not set forth **any** continuous and systematic contacts that would render Mr. Khatchadoorian "at home" in Louisiana. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 610 (5th Cir. 2008)("vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction.").

Mr. Khatchadoorian resides and works in California.[12] He has never been to Louisiana.[13] He has never resided or owned real property in Louisiana, and he has no post office boxes, telephone listings, bank accounts, or any other property in Louisiana.[14] Mr. Khatchadoorian certainly does not have systematic, continuous, or substantial contacts with Louisiana. Accordingly, there is no basis for a finding that the court has general jurisdiction over Mr.

---

[11] Khatchadoorian Aff. at ¶ 1.
[12] Khatchadoorian Aff. at ¶ 1.
[13] Khatchadoorian Aff. at ¶ 2.
[14] Khatchadoorian Aff. at ¶ ¶ 2-3.

Khatchadoorian. Sensiva's claims against Mr. Khatchadoorian should be dismissed for lack of personal jurisdiction.

Even if the Court believes that it has personal jurisdiction over Mr. Khatchadoorian, which Mr. Khatchadoorian disputes, it should dismiss Sensiva's claims against him for the additional reasons set forth below.

**B. Sensiva Fails to State a Claim Against Mr. Khatchadoorian or UMI.**

**1. Legal Standard for Motion to Dismiss Pursuant to Rule 12(b)(6).**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings, and the documents attached to the complaint. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

**2. Motion to Dismiss for Failure to Plead Fraud with Particularity Under Rule 9(b).**

Plaintiffs' fraud allegations are subject to Rule 9(b) of the Federal Rules of Civil Procedure, which imposes a heightened and stricter pleading requirement than the basic notice pleading standard of Rule 8. *See*, *e.g.*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (5th Cir. 2008) ("state-law fraud claims are subject to the pleading requirements of Rule 9(b)"); *Williams*

*v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules. . . .").

Under Louisiana law, fraud is "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. Federal Rule of Civil Procedure 9(b) states that a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." The court determines whether this pleading requirement is satisfied on a case-by-case basis. *Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003). A plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (citing *Williams,* 112 F.3d at 177; *Nathenson v. Zonagen, Inc.,* 267 F.3d 400, 412 (5th Cir. 2001)); *Dorsey*, 540 F.3d at 339. The plaintiff must allege specific facts supporting an inference of fraud. *Id.*

The failure of a plaintiff to meet these conditions and plead in compliance with Rule 9(b) constitutes a failure to state a claim under Rule 12(b)(6). *See United States ex. rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)). Moreover, the Fifth Circuit interprets Rule 9(b) strictly. *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002); *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002). In the words of the Fifth Circuit, Rule 9(b) is applied "with force, without apology." *Williams*, 112 F.3d at 178.

For example, in *Williams*, the plaintiffs' fraud claims consisted of allegations that defendant's representative made face to face misrepresentations to them at a meeting, misrepresentations in the defendant's prospectus, and false disseminations to the market

perpetrated through a collection of newspaper articles which were excerpted in the complaint. 112 F.3d at 178-79. The Fifth Circuit found that the plaintiffs' allegations failed to state a claim for fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure and instructed the trial court to dismiss the claims. *Id.* at 180. With respect to the statements made by the defendant's representative, the court reasoned that the complaint did not state a place or time that these representations were made. *Id.* at 178-79. The court found that the plaintiffs' broad allegations that defendants' prospectus contained fraudulent statements were also insufficient because even though the plaintiffs excerpted portions of the prospectus, they failed to provide any analysis of its contents or falsity. *Id.* at 179. The court found that the allegations of fraud perpetrated in the press suffered from the same type of deficiencies because the plaintiffs failed to demonstrate which statements were fraudulent or attributable to defendant or explain why the statements or omissions complained of were false or misleading. *Id.* Applying this standard, dismissal of Plaintiffs' fraud claims is appropriate here.

**3. Sensiva Fails to State a Claim for Fraud Against Mr. Khatchadoorian or UMI.**

Sensiva's "complaint fails to detail facts regarding who, what, when, where, and how Defendant allegedly acted fraudulently." *Umbrella Investments Grp., L.L.C. v. Wolters Kluwer Fin. Servs., Inc.,* CV 19-02156, 2020 WL 68613, at *2 (E.D. La. Jan. 7, 2020) (J. Guidry), *aff'd sub nom. Umbrella Inv. Grp., L.L.C. v. Wolters Kluwer Fin. Servs., Inc.,* 972 F.3d 710 (5th Cir. 2020). In Sensiva's Complaint it asserts fraud claims against Mr. Khatchadoorian and potentially UMI. However, its fraud claims rely exclusively on conclusory allegations and fail to plead the requisite underlying specific facts.

The entirety of Sensiva's purported fraud allegations are set forth below:

**COUNT TWO: FRAUD**

17. Plaintiff re-alleges the allegations contained in Paragraphs 1 through 15 of this Complaint as if the same were restated herein.

18. Along with UMI, Defendant Khatchadoorian is personally liable to Sensiva because he specifically represented to Sensiva the following with respect to the LFDs, despite knowing that such representations were false:

(i) That the LFDs were completed.

(ii) That the LFDs contained updated cartridges with CT lines that were clearly marked.

(iii) That the LFDs contained proper chromatography paper with no control line drop outs

(iv) That the LFDs would be bulk shipped and vacuum sealed with desiccant in bag.

(v) That the LFDs would have buffer solution in bulk

(vi) That UMI would provide positive controls sufficient to test 25 LFDs per 5,000 tests.

19. Defendant Khatchadoorian made these misrepresentations to Sensiva with the intention to obtain an unjust advantage and to cause a loss or inconvenience to the Sensiva.

Rule 9(b) requires that Plaintiffs articulate claims of fraud with particularity, and jurisprudence interpreting Rule 9(b) has clarified that fraud allegations sufficient to satisfy Rule 9(b) must include ***specific facts*** establishing:

- Who allegedly committed fraud;
- What specific fraudulent statements were made – *i.e.*, a description of the alleged fraudulent statements or misrepresentation or concealment of fact;
- When the allegedly fraudulent statements were made;
- Where the allegedly fraudulent statements were made;
- How the allegedly fraudulent statements were made;
- Specific acts demonstrating that Mr. Khatchadoorian had intent to commit a fraud; and
- Specific facts showing that the Sensiva relied to their detriment on the allegedly fraudulent statements.

Just like in *Williams*, *w*ithout pleading all of these specific facts, which Sensiva has not done, Plaintiff has failed to properly allege fraud as required by Rule 9(b).

Curiously, Sensiva's allegations against Mr. Khatchadoorian of his specific "fraudulent statements" are essentially verbatim to the language that Sensiva listed for the specifications set forth in its January 18, 2021 Purchase Order.[15] In reality, the allegations Sensiva makes are not specific fraudulent statements but instead are breach of contract claims that should be brought against UMI. Sensiva's allegations are nothing more than an improper attempt to retaliate against a corporate officer for the actions of the corporation, which is not permitted under the law.

At a minimum, Sensiva does not identify when the alleged fraudulent statements or misrepresentations were made, where the allegedly fraudulent statements were made, or how the allegedly fraudulent statements were made. *See, e.g., Crescent City Surgical Ctr. v. Cigna Health & Life Ins. Co*., CV 18-11385, 2020 WL 1503534, at *2 (E.D. La. Mar. 30, 2020)(J. Guidry) (dismissing fraud claim for failure to plead when the alleged fraudulent statements or misrepresentations were made and failing to make specific factual allegations as to Defendant's intent to deceive other than a conclusory assertion that it believed Defendant intended to deceive). Additionally, Sensiva makes no specific factual allegations as to Mr. Khatchadoorian's intent to deceive other than a conclusory assertion that it believed Defendant intended to deceive Sensiva. *Id.*

---

[15] This is evidenced by comparing the fraud allegations listed above (Rec. Doc. 1, p.4) to the following language from Sensiva's Purchase Order (Rec. Doc. 1-1, p.1):

**Specifications**

1. COMPLETED LATERAL FLOW DEVICES
2. UPDATED CARTRIDGE WITH CT LINES CLEARLY MARKED
3. PROPRER CHROMATOGRAPHY PAPER (NO CONTROL LINE DROP OUTS)
4. BULK SHIPPED & VACUUM SEALED WITH DESICCANT IN BAG
5. BUFFER SOLUTION IN BULK
6. PROVIDE POSITIVE CONTROLS SUFFICIENT TO TEST 25 LFD'S PER 5,000 TESTS

Finally, Sensiva's allegations are devoid of any allegations as to how it relied on any allegedly fraudulent act of Defendants to their detriment. Plaintiffs must plead "reliance" ***with particularity.*** *See*, *e.g.*, *Learning Works, Inc. v. Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987) ("[r]easonable, detrimental reliance upon a misrepresentation is an essential element of a cause of action for fraud, and [that] reliance must be pleaded with particularity") (internal citation omitted); *Devaney v. Chester*, 709 F. Supp. 1255 (S.D.N.Y. 1989) (finding the Complaint deficient under 9(b) because, *inter alia*, plaintiff failed to plead reliance amply); *Apperson v. Ampad Corp.*, 641 F. Supp. 747, 751 (N.D. Ill. 1986) (stating that the 9(b) requirements necessitate pleading reliance with particularity). The Complaint fails to even allege that Sensiva relied upon Mr. Khatchadoorian's purported misrepresentations much less provide factual support for such allegations. Sensiva's bare-boned pleading fails to meet the specificity required by Rule 9(b) to assert claims against Mr. Khatchadoorian or UMI for fraud. In reality, these deficient allegations look to be made for the improper purpose of harassing Mr. Khatchadoorian and UMI, causing unnecessary delay, and needlessly increasing the cost of litigation. See Fed. R. Civ. Proc. 11(b). Sensiva's allegations are patently insufficient to state a claim for fraud under Rule 9(b) against Mr. Khatchadoorian or UMI.

## III. CONCLUSION

For the foregoing reasons, Mr. Khatchadoorian respectfully requests that this Court grant his Motion to Dismiss for Lack of Personal Jurisdiction under Rule 12(b)(2) or alternatively dismiss Plaintiff's claims for fraud with prejudice as the allegations fail to meet the particularity standard of Rules 9(b) and 12(b)(6) as a matter of law. Additionally, UMI request the Sensiva's fraud claims against UMI likewise be dismissed pursuant to Rules 9(b) and 12(b)(6).

Respectfully Submitted:

*/s/ Tyler D. Trew*

Tyler D. Trew (La. Bar #34125)
Alec N. Andrade (La. Bar #38659)
LISKOW & LEWIS
One Shell Square, 50th Floor
701 Poydras Street
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Fax: (504) 556-4108
Email: ttrew@liskow.com
Email: aandrade@liskow.com

*Attorneys for Karekin Khatchadoorian and Universal Meditech Inc.*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on May 24, 2021, the foregoing was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Tyler D. Trew*