**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SENSIVA HEALTH, LLC**<br>**VERSUS**<br>**UNIVERSAL MEDITECH, INC. and KAREKIN KHATCHADOORIAN** | **CIVIL ACTION NO. 21-00598**<br>**JUDGE GREG GERARD GUIDRY**<br>**MAGISTRATE JUDGE MICHAEL NORTH**<br>**JURY TRIAL DEMANDED** |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

Plaintiff Sensiva Health, LLC respectfully moves the Court for an order compelling Defendant Universal Meditech, Inc. to permit inspection of the manufacturing and laboratory facilities at which UMI's test kits produced for Sensiva were allegedly made and/or tested as well as all test kits produced for Sensiva. For the reasons given below, the Motion should be granted.

**Introduction and Summary of the Argument**

This case involves UMI's failure to provide COVID-19 Lateral Flow Devices ("LFDs" or "test kits") in accordance with the representations made to Sensiva and the specifications and other requirements (including the right to inspect) set forth in the parties' agreements. Sensiva files this Motion out of necessity. Sensiva was under the impression that counsel for Sensiva and UMI were productively working together to coordinate reciprocal inspections agreed to by the parties. Notably, Sensiva was going to inspect the manufacturing and laboratory facilities at which UMI's test kits produced for Sensiva were allegedly made and/or tested as well as all test kits produced for Sensiva, while UMI was going to inspect other LFDs or test kits manufactured and/or sold by Sensiva. Many emails and calls were exchanged over the past couple of months working out the

details of the reciprocal inspections agreed to by the parties. *See, e.g.*, Exh. A at 1–2, 12; Exh. B at 4–6; Exh. C at 1–2; Exh. D; Exh. E at 1; Exh. F. The parties had agreed to proceed with the reciprocal inspections in late May;[1] however, when it came time to book the flights to UMI's facility in Fresno, California, UMI was unable to confirm. Thereafter, counsel for UMI indicated that UMI now objects to the inspections and will not allow them to proceed. Counsel for Sensiva has repeatedly requested UMI's formal position as to why it now objects to the inspections. *See, e.g.*, Exh. E at 1. UMI has refused to provide a formal response, but has indicated that its objection is based on confidentiality concerns that it seemingly cannot articulate or elaborate on.[2] *See id.* As recent as May 27, 2022, Sensiva has learned that UMI's counsel intends to withdraw and will be replaced by new counsel in the near future. *See* Exh. F. But, in the meantime, Sensiva must protect its rights (particularly in light of approaching deadlines) and proceed with this Motion to compel the inspections.

UMI's recent refusal to permit the inspections has inhibited the progress of this litigation, requiring repeated extensions of the expert report and disclosure deadlines, and there is no basis for the refusal.[3] The inspections are highly relevant to the claims and defenses in this litigation. For instance, UMI expressly represented to Sensiva that its LFDs would be manufactured in the

[1] *See* R. Doc. 75 at 3 (representing that the parties "have tentatively scheduled mutual inspections at the end of May"); R. Doc. 85 at 2 (representing that, "[a]lthough the parties previously discussed mutual inspections taking place on May 31, 2022, UMI is unable to agree to such inspections proceeding due to confidentiality concerns").

[2] UMI has never objected on the basis of relevancy and, in fact, has repeatedly acknowledged the relevancy and importance of the inspections.

[3] Recognizing the importance of the inspections (and the fact that they are necessary for purposes of Sensiva's expert's opinion), UMI repeatedly either recommended or consented to extensions of the expert report and disclosure deadlines as the parties were working though the logistics for the inspections.

United States and would match samples earlier provided, but then delivered "flimsy, low-grade, translucent Chinese-made cassettes and diluent that was neither prepared nor packaged in a sterile fashion." R. Doc. 12 at ¶ 14; *see also* R. Doc. 72-2 at ¶¶ 21, 24–26, 29–30. Additionally, the Purchase Order contained explicit specifications, and was subject to inspection. *See* R. Doc. 12 at ¶¶ 19–22. However, as set forth in Sensiva's Complaint, the LFDs were not manufactured in the United States and Sensiva was not permitted to engage in the required inspection. *See id.* at ¶¶ 23–42. Indeed, when a Sensiva representative appeared to inspect the LFDs in March 2021, he was broadly denied access, and the limited subset of test kits he was able to inspect were substantially out of compliance with the Purchase Order. *See id.*

UMI continues to maintain that the LFDs were manufactured in the United States at its Fresno, California facility; however, Sensiva avers that this simply is not possible in light of the size of the Fresno, California building and other observations made by Sensiva's representative at his March 2021 visit. Sensiva is entitled to inspect the Fresno, California facilities to confirm that they are even capable of the operations claimed (*e.g.*, that they have the necessary equipment, production lines, etc.), and that the facilities are in compliance with applicable health and safety standards.

Furthermore, UMI claims that it completed production for Sensiva and the test kits have been awaiting delivery upon completion of payment. *See* R. Doc. 18 at 17–18, 38. Sensiva suspects, however, that the entirety of the Purchase Order was never produced, much less that it continues to sit at the Fresno, California facility with no use (*e.g.*, sale to an alternative party). Therefore, it is important that Sensiva is allowed to inspect the entirety of the order. Moreover, it is important that Sensiva be able to assess the quality of the entire order, including whether it conformed to the applicable standards, representations, and specifications.

Finally, there are no proprietary policies, practices, or procedures that would be revealed by the inspection and nothing can be "reverse-engineered" from the simple visual inspection being requested. Nevertheless, there is a Protective Order already entered in this case that would protect any proprietary information and prevent any information from being used for any purpose other than this litigation.[4] *See* R. Doc. 49.

For the reasons discussed herein, this Court should grant Sensiva's Motion and compel the inspection of UMI's Fresno, California facilities as well as the entirety of the test kits allegedly produced for Sensiva.[5]

## Background

### I. Procedural and scheduling history.

Sensiva filed its initial Complaint against Defendants on March 25, 2021, and filed its First Amended Complaint on June 11, 2021. *See* R. Docs. 1, 12. Defendants filed their Motion to Dismiss the Amended Complaint on June 25, 2021. *See* R. Doc. 17. UMI filed its answer on July 9, 2021, also asserting a counterclaim against Sensiva, Cormeum Lab Services, LLC, and Dr. Tarun Jolly. *See* R. Doc. 18. Sensiva, Cormeum, and Dr. Jolly moved to dismiss UMI's counterclaim on August 3, 2021. *See* R. Doc. 36.

During the pendency of the parties' motions to dismiss, the parties agreed on, and the Court ordered, several scheduling changes. Notably, the Court granted a joint motion to continue the

[4] Additionally, although Sensiva believes that it should be entitled to have a company representative attend the inspection (*e.g.*, someone who can attest to whether the observations are in accordance with the representations made to the company and its representatives), in an effort to accommodate UMI's alleged concerns, Sensiva has even offered that its expert and counsel be the only persons to attend the inspection. This has not moved the ball.

[5] Sensiva separately has moved to continue Sensiva's expert report and disclosure deadline until 14 days after the date on which Sensiva ultimately conducts its inspections.

expert report and disclosure deadlines (R. Doc. 51), continuing the expert report and disclosure deadline pending ruling on the motions to dismiss, with new deadlines to be reset after that ruling. *See* R. Doc. 53. On January 5, 2022, the parties jointly moved to continue the witness and exhibit list deadlines. *See* R. Doc. 54. The Court granted that motion on January 6, 2022, continuing the pretrial conference previously set for March 9, 2022, and the jury trial previously set for March, 28, 2022, and noting that the Court's Case Manager would notice a scheduling conference to select a new trial date and related deadlines. *See* R. Doc. 55. The Court held a scheduling conference on January 27, 2022 and issued a new scheduling order. *See* R. Doc. 57. Under the new scheduling order, Plaintiff's and Defendant's expert reports and disclosures were to be due by April 14, 2022 and May 13, 2022, respectively; depositions for trial use were to be taken and all discovery was to be completed by May 31, 2022; and pre-trial motions were to be filed in sufficient time to permit hearing thereon no later than June 22, 2022. *See* R. Doc. 57 at 1–2.

On March 7, 2022, the Court granted in part and denied in part the parties' motions to dismiss. *See* R. Docs. 61, 62. On March 28, 2022, the parties jointly moved to continue Plaintiff's and Defendant's expert report and disclosure deadlines to May 16, 2022 and June 13, 2022, respectively, and also to establish a response deadline for Counter-Defendants to respond to Defendant's and Counter-Plaintiff's expert reports of July 11, 2022. *See* R. Doc. 69 at 1–2. The parties also requested that that the pre-trial motion deadline be extended to July 19, 2022. *See id.* at 2. On April 13, 2022, the Court granted the joint motion for extension, ordering that Plaintiff's and Defendants' expert report and disclosure deadlines be extended to May 16, 2022 and June 13, 2022, respectively; that a response deadline for Counter-Defendants to respond to Defendant's and Counter-Plaintiff's expert reports be set for July 11, 2022; and that the pre-trial motions deadline

be reset to July 6, 2022 (noting that the parties may request leave to file beyond that date). *See* R. Doc. 71.

Recognizing that the inspections would not be accomplished in advance of the May 16, 2022 expert report deadline, Sensiva filed an unopposed motion to continue the expert report and disclosure deadlines to account for tentatively scheduled inspections in late May, *see* R. Doc. 75, and UMI later moved for another extension of the expert report and disclosure deadlines (among other deadlines) once it became clear that UMI would not allow inspections in May, *see* R. Doc. 85. Presently, fact discovery must be completed by June 30, 2022; Plaintiff's and Defendant's expert report and disclosure deadlines are due June 20, 2022 and July 11, 2022, respectively; and Counter-Defendants must respond to Defendant's expert reports by July 25, 2022. *See* R. Doc. 88.

Necessarily, all discovery critical to those expert reports and disclosures—and notably the inspection at issue here—must be completed and reviewed before Sensiva's expert report deadline, which is currently June 20, 2022.

## II. Pertinent discovery requests.

Central to this dispute is the compliance of UMI's COVID-19 test kits with representations made by UMI to Sensiva and the agreed specifications for Sensiva's purchase of the test kits from UMI. *See, e.g.*, R. Doc. 61 at 1–2. Notably, Sensiva alleges that UMI expressly represented to Sensiva that its LFDs would be manufactured in the United States and would match samples earlier provided, but then delivered "flimsy, low-grade, translucent Chinese-made cassettes and diluent that was neither prepared nor packaged in a sterile fashion." R. Doc. 12 at ¶ 14; *see also* R. Doc. 72-2 at ¶¶ 21, 24–26, 29–30. Further, the Purchase Order contained explicit specifications, and was subject to inspection. *See* R. Doc. 12 at ¶¶ 19–22. And, UMI claims that it completed

production for Sensiva and the test kits have been awaiting delivery upon completion of payment. R. Doc. 18 at 17–18, 38.

For months, Sensiva has attempted to schedule an inspection of UMI's Fresno, California facilities and the test kits that are the subject of both Sensiva's and UMI's claims and defenses in this litigation. On December 6, 2021, Sensiva issued its First Set of Interrogatories and Requests for Production of Documents. *See* Exh. G. This included a request that UMI "[p]roduce for inspection all products that You allege are being held at Your facilities for delivery to Sensiva." *See id.* at 7 (RFP No. 11). UMI, in turn, requested inspections of sample test kits in Sensiva's possession, *see* Exh. H at 14, 23 (RFPs 33 and 80), and responded to Sensiva's inspection request that "UMI will produce the LFDs for inspection upon agreement of a mutually agreeable place, date, time, and inspection protocol." *See* Exh. I at 11–12 (Response to RFP 11). Over the ensuing months, counsel for Sensiva and UMI discussed mutual inspections, which also included Sensiva's inspection of UMI's facility in Fresno, California.

On April 18, 2022, out of an abundance of caution and to formalize the discussions that had been taking place as to the agreed inspections, Sensiva issued its Second Set of Interrogatories and Requests for Production of Documents and Requests for Inspection. *See* Exh. J. These requests further detailed the anticipated inspections and Sensiva specifically requested that UMI produce and make available for inspection no later than two weeks before the expert report deadline the following: (1) UMI's manufacturing facility purportedly located in Fresno, CA or alternatively, the manufacturing facility where the LFDs that were the subject of Sensiva's order were made; (2) UMI's laboratory facility purportedly located in Fresno, CA or alternatively, the manufacturing facility where the LFDs that were the subject of Sensiva's order were made and/or tested; and (3) all LFDs that were allegedly produced for Sensiva, including, but not limited to, (i) samples

produced and/or provided to Sensiva as representative of the LFDs and (ii) the entirety of the LFDs that were the subject of the purchase order by and between Sensiva and UMI and that UMI is alleging damages in connection with. *See* Exh. J at 7–8.[6] Notably, Sensiva intends only to visually inspect the facilities and test kits; it does not intend to conduct any testing. In connection with its inspection requests, Sensiva reiterated that it was important "to get [the inspection] scheduled as soon as possible as that will need to take place well in advance of the new expert report deadline, which while extended is still right around the corner." *See* Exh. A at 2.

While the parties continued to confer over timing and logistics of the inspections, UMI consistently acknowledged and agreed as to the relevancy and importance of the inspections. UMI initially maintained that it wanted to wait to schedule the inspections until after the parties had entirely completed their document productions. *See* Exh. B at 6. But, it subsequently agreed that the inspections could proceed in late May, even though documents continue to be produced on a rolling basis. *See* R. Doc. 75; Exh. C at 2; Exh. D. However, now, it appears that UMI objects to the inspection in its entirety. While it has refused to provide a formal position, counsel for UMI has verbally—and very generally—referenced confidentiality concerns. *See* Exh. E at 1. When Sensiva pressed UMI as to what the confidentiality concerns actually are and why such concerns are not addressed by the protective order already in place, UMI has declined to respond.

In the meantime, the most recently extended expert report deadline continues to approach. As such, while Sensiva would like to work out the timing and the logistics of the inspections with

[6] Sensiva has graciously agreed to an extension in connection with the most recent set of discovery requests; therefore, UMI has not served written responses to such requests. But Sensiva has made clear that such extension does not apply to the requests for inspection which Sensiva maintains much proceed as soon as possible. *See* Exh. F. at 1 ("And, to be clear, while we agree with respect to written discovery, we continue to be adamant that we need to proceed with the inspection as soon as possible.").

UMI, it appears that it has hit a dead end with UMI's resistance to provide any formal explanation as to its outright refusal to engage in the inspections and the anticipated change of counsel.

**Law and Argument**

**I. Legal standard.**

Federal Rule of Civil Procedure 34 allows a party to request that another party "permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34(a)(2). Such requests must be within the scope of Rule 26(b), which provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). "Information within the scope of discovery need not be admissible in evidence to be discoverable." *Id.* Rather, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* If "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34," the "party seeking discovery may move for an order compelling . . . inspection." Fed. R. Civ. P. 37(a)(3)(B).

**II. UMI should be compelled to permit inspection of its manufacturing facility, laboratory facility, and all test kits that were allegedly produced for Sensiva.**

Sensiva issued its first request for inspection of all products that UMI alleges are being held at its facilities for delivery to Sensiva on December 6, 2021. *See* Exh. G at 7 (RFP No. 11). Sensiva clarified in its second request that its request for inspection covers the manufacturing and laboratory facilities at which the test kits were made and/or tested as well as all test kits produced

for Sensiva. *See* Exh. J at 7–8. UMI also seeks to inspect test kits that Sensiva manufactured and/or sold, and the parties have negotiated for months to schedule mutual inspections. But, UMI has recently changed course and now refuses to allow Sensiva's inspection.

There is no question that Sensiva's requested inspection is relevant to its claims and defenses. Sensiva alleges that UMI promised Sensiva test kits made with "high-quality materials" at UMI's California facility, but then provided "flimsy, low-grade, translucent Chinese-made cassettes and diluent that was neither prepared nor packaged in a sterile fashion" and did not comply with the purchase terms. *See* R. Doc. 12 at ¶ 14; *see also id.* ¶¶ 13, 19–22 (representations that LFDs would be consistent with prior samples and with contractual specifications, subject to Sensiva's inspection rights). Sensiva further alleges that UMI otherwise interfered with Sensiva's contractual right to inspect the test kits. R. Doc. 12 at ¶¶ 19–40. Also relevant, UMI claims that it is holding Sensiva's test kits at its California facility and that these test kits are compliant with the parties' contractual agreements. *See* R. Doc. 18 at 17–18, 38.

The origin and quality of the test kits UMI manufactured for Sensiva is central to this case. And, inspection is necessary to assess the origin and quality of those test kits. Accordingly, UMI should be ordered to permit inspection forthwith as being relevant to Sensiva's claims and defenses. *See Mr. Mudbug, Inc. v. Bloomin' Brands, Inc.*, No. 15-5265, 2017 U.S. Dist. LEXIS 14333, at *5–7 (E.D. La. Feb. 1, 2017) (granting motion to compel site inspection of invoiced products in case involving alleged "breach of contract to supply quality products" because "the existence, identity, and quantity of the food product" was at issue in the lawsuit); *Gaudet v. GE Indus. Servs.*, No. 15-795, 2016 U.S. Dist. LEXIS 59902, at *12–13 (E.D. La. May 5, 2016) (granting motion to compel inspection in products-liability case alleging "manufacture and design

defects," holding that "inspection of the product is crucial" because "a party's examination . . . may be critical to ascertaining, among other things, the presence of the defect").

While UMI has declined to provide a formal explanation for its recent outright refusal to allow the previously agreed upon mutual inspections, UMI's counsel has generally expressed "confidentiality concerns" but was not in a position to elaborate or provide a formal position. *See* Exh. E at 1. Sensiva cannot conceive of any valid "confidentiality concerns." It merely wants to visually assess the facilities where the product that is the subject of this litigation was allegedly manufactured and tested and the product that was *meant for* Sensiva. There will be no testing, and no chance that any proprietary information could be "reverse engineered." Furthermore, there is a Protective Order entered in this case that will serve to safeguard any confidentiality concerns and ensure that any visual observations are solely for purposes of this litigation.[7] *See* R. Doc. 49. For the foregoing reasons, the requested inspections should be compelled such that they may proceed in a timely fashion.

## Conclusion

For the foregoing reasons, Plaintiff Sensiva Health, LLC respectfully requests that the Court grant its Motion and order UMI to permit inspection of the manufacturing and laboratory facilities at which UMI's test kits produced for Sensiva were made and/or tested as well as all test kits produced for Sensiva within thirty (30) days. Sensiva has separately moved to continue

[7] UMI has not articulated the details of any purported confidentiality interests, nor explained how the Protective Order (R. Doc. 49) would fail to safeguard it in connection with the inspection. Perhaps, if UMI were to articulate valid concerns and meet its burden (which Sensiva maintains it cannot do), it may be appropriate to exclude Sensiva representatives from inspection of the manufacturing and/or laboratory facilities where the test kits at issue were made and/or tested. But it is altogether a different matter to exclude Sensiva representatives from viewing the inspection of the products UMI *intended to send* to Sensiva in the first place and which Sensiva was contractually entitled to inspect.

Sensiva's expert report and disclosure deadline until 14 days after the date on which Sensiva ultimately conducts its inspections.

Respectfully Submitted:

*/s/ Lauren C. Mastio*

TARAK ANADA (#31598)
LAUREN C. MASTIO (La. Bar #33077)
MICHAEL J. O'BRIEN (La. Bar #38852)
TREY K. BARTHOLOMEW (#39114)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
and
445 North Blvd., Ste. 800
Baton Rouge, LA 70802
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com
lmastio@joneswalker.com
mobrien@joneswalker.com
tbartholomew@joneswalker.com

*Attorneys for Sensiva Health, LLC, Cormeum Lab Services, LLC, and Tarun Jolly, M.D.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 1, 2022, the foregoing was filed electronically using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Lauren C. Mastio*