EXHIBIT B

**O'Brien, Michael**

**From:** Tyler Trew <TTrew@liskow.com>
**Sent:** Thursday, May 5, 2022 9:07 AM
**To:** Mastio, Lauren; Anada, Tarak
**Cc:** O'Brien, Michael; Melanie Derefinko; Alec Andrade
**Subject:** [EXTERNAL] FW: Sensiva/UMI - Discovery Conference

Lauren,

I have commented below in red with any clarifications I have to your email. Additionally, below will confirm our agreement on the following issues discussed during the April 25th call. Please let me know if you disagree with any of the statements/agreements set forth below.

1.The parties will come to a mutual agreement on what accounting/financial documents that will be turned over.

2. Please confirm that no documents are being withheld as relates to the following Requests for Production of Documents as required by FRCP 34(B)(2)(C): RFP Nos. 10-19, 39, 72, and 74 to Cormeum and Sensiva .You confirmed during the telephone conference that no documents were being withheld regarding RFPs 79 and 80 to Sensiva

3.The date limitation provided by UMI to address Sensiva's proportionality concerns (December 1, 2020-April 30, 2021) has resolved Sensiva's proportionality concerns and responsive documents containing the terms below falling within the December 1, 2020-April 30, 2021 time period will be produced.

* COVID-19: 33,707
* Distribut*: 43,507
* FDA: 23,473
* Inspection: 13,935
* Manufactur*: 26,811
* Package*: 29,752
* Saliva: 23,734
* SARS-COv-2: 17,093
* Specification: 14,651
* VitaPros: 8,160

4.Neither Sensiva nor Cormeum have an errors and omissions or other relevant insurance policy that would be responsive to RFP 23.

5.Tarak is preparing a draft of the stipulation regarding the SBE claim that we can expect to receive soon. Please let us know when you expect to send this over.

Tyler D. Trew
Shareholder
Direct 504.556.4164
Fax 504.556.5108
**Lawyer Profile**

LISKOW&LEWIS

NEW ORLEANS | LAFAYETTE | HOUSTON | BATON ROUGE

701 Poydras Street, Suite 5000 | New Orleans, LA 70139
**Liskow.com**

**Liskow & Lewis, A Professional Law Corporation.** This communication is solely for the person to whom it is addressed. It contains legally privileged and confidential information. If you are not the intended recipient, you may not forward, disclose, copy, print, or save the message or its attachments. If you have received this message in error, please notify me immediately, and please delete this message.

**From:** Mastio, Lauren <lmastio@joneswalker.com>
**Sent:** Monday, May 2, 2022 3:47 PM
**To:** Tyler Trew <TTrew@liskow.com>
**Cc:** Melanie Derefinko <MDerefinko@liskow.com>; Alec Andrade <AAndrade@liskow.com>; Anada, Tarak <tanada@joneswalker.com>; O'Brien, Michael <mobrien@joneswalker.com>
**Subject:** [External Email] Sensiva/UMI - Discovery Conference

**[EXTERNAL EMAIL]**

Tyler,

Please see my notes/commentary below in blue memorializing our discovery conference that took place on Monday, April 25. Please let me know if you disagree with any of the statements/agreements set forth below.

Many thanks,

Lauren

**Lauren Courtney Mastio** | Partner
Jones Walker LLP
D: 504.582.8518 | M: 615.498.9745
lmastio@joneswalker.com

**From:** Mastio, Lauren
**Sent:** Thursday, April 21, 2022 11:21 AM
**To:** 'Tyler Trew' <TTrew@liskow.com>
**Cc:** Melanie Derefinko <MDerefinko@liskow.com>; Alec Andrade <AAndrade@liskow.com>; Anada, Tarak <tanada@joneswalker.com>; O'Brien, Michael <mobrien@joneswalker.com>
**Subject:** RE: [EXTERNAL] FW: Sensiva/UMI - search terms we would like to remove

Hi Tyler,

In advance of our discovery conference this afternoon, I wanted to send you a list of issues identified in connection with UMI's responses this far. Please note that this is a nonexclusive list and Cormeum and Sensiva reserve their right to raise additional issues as they may be discovered. The issues for discussion are outlined below:

Interrogatory No. 2 and 4. We are asking you to identify the persons or entities to whom UMI marketed, offered, sold, licensed or otherwise made available LFDs and notably the dates (among other information). This is directly related to the issue of exclusivity raised by UMI as well as the damages being alleged. It appears from your response that the only persons or entities UMI marketed or sold to from December 2020 to the lawsuit are Cormeum and Sensiva, but this is unclear. Is this your intended response, and if so, please clarify. You have objected and refuse to respond to this interrogatory for the period of time following the date

of the lawsuit. This is directly relevant to UMI's alleged damages as well as any efforts to mitigate and there is a protective order in place. As such, there is no basis for this objection. We are going to need to provide this marketing and sales information to our economic expert, question witnesses about it at depositions, and present it at trial so we should discuss the confidentiality issues at this juncture.

You agree that this information is relevant, but you were just waiting to provide it until a confidentiality agreement or protective order was in place. Now that one is in place, this information will be provided.

Interrogatory No. 3. Please confirm that no information is being withheld on the basis of your objections.

Confirmed.

Interrogatory No. 8. The timeframe is limited based on your stated interpretation and construction of LFDs (Covid is a relatively recent issue). This request is highly relevant so that we can discover other quality issues experienced by other companies.

You agree that this information is relevant, but you were just waiting to provide it until a confidentiality agreement or protective order was in place. Now that one is in place, this information will be provided.

Interrogatory No. 10. Please provide the requested information for the entity referenced in Response to Interrogatory No. 5. Also, going back to Interrogatory No. 5, please confirm that there are no other entities that had any role in providing any components/parts whatsoever in connection with the LFDs.

You indicated that the main components including the membrane was manufactured at UMI's facility in CA, and that the only entity providing any other component parts was the entity identified in Interrogatory No. 5. AI DE Diagnostics Co. Ltd is the entity that provided component parts. We will amend our discovery responses accordingly.

Interrogatory No. 11. I have not seen documents that reflect UMI's cost of production. Have these been produced yet or are they forthcoming?

You indicated that you believe that this will be reflected in the financial documents that have yet to be produced, but will be produced. However, you noted that the cost likely changed over time so we will need to figure out how to address this.

Virtually all responses to requests for production reference "non-privileged responsive documents". Are there privileged documents that are being withheld? If so, when can we expect to receive a privilege log?

You confirmed that this is just your standard response and that there are very few privileged documents. You indicated that you will provide a single privilege log at the completion of UMI's production. You likewise confirmed that Sensiva, Cormeum, and Jolly would provide its privilege log at the completion of their document production.

Also, it is impossible to determine whether documents are being withheld on the basis of certain documents. Can you please clarify this so that we understand whether documents are being withheld in response to any particular requests? There are just a lot of categories that I understand will be produced but I haven't yet come across responsive documents (I also note that I have not yet made it through the entirety of UMI's production to date so that may be a factor).

You indicated that you are not withholding anything having to do with Covid testing (antigen or antibody), whether it has to do with Cormeum, Sensiva or any other customers or suppliers.

RFP No. 15. We maintain that insurance policies are relevant. Particularly any that may have to do with general liability or errors and omissions.

You indicated that there are no insurance policies that would apply to the issues that are the subject of this litigation.

RFP No. 31. Complaints by other customers relating to LFDs or other products are highly relevant as they go to the company's representations regarding its products and the actual quality of UMI's products.

You indicated these would all be produced. As discussed during the call UMI is producing documents that relate to any complaints regarding LFDs related to Covid including both antigen and antibody tests.

RFP No. 35. UMI's annual reports and other similar financial reports are directly relevant to UMI's alleged damages.

You agreed that financial documents are relevant and we agreed to work by email to develop a reciprocal list of document/reports (this does not supplant additional requests specific to certain categories of damages; this is just a way to streamline the production of financial documents/reports). I plan to circulate to you a proposed reciprocal list of financial documents in the next couple of days. We also agreed to discuss confidentiality issues with our clients and confirm that they are comfortable proceeding with the agreement in place.

RFP No. 38. We are entitled to see the facilities where the LFD's were manufactured. They were represented to have been manufactured at UMI's facility in Fresno, CA. The location is relevant to the representations made by UMI and the facility or facilities themselves are relevant to the quality of the products produced therefrom.

You agreed to the inspection of the facility (this issue is discussed in greater detail below). I also narrowed the request regarding photographs so as to clarify that we would like all photographs of the locations where the product subject to the Purchase Order would have been manufactured during the time frame that is would have been manufactured. Specifically, this would include the native files of photos depicting the coding, striping, production line, etc., as well as the storage of the product. This sounded reasonable to you but you just needed to confirm that confidentiality would not be an issue. Please let us know by the end of next week whether these photographs will be provided. We will provide photographs from the narrowed timeframe to the extent they exist.

We appreciate you addressing the issue identified where parents were not previously linked to children (e.g., emails and their attachments). We did identify another issue that we would appreciate being corrected in future productions. Our practice support has described the issue as follows: "…although UMI has been providing text files and a "text link" field in their load files, the linking field is actually empty." Can you please have your vendor address this in future productions?

You indicated that you would speak with your vendor about correcting this issue. I also sought clarity regarding your email dated April 12, 2022. You indicated that the listed bates numbers refer to documents that were previously produced but missing one or more attachments. Therefore, I do not need to review the entire production that was made on April 5th since much of it may be duplicative, but rather if I review the bates numbers that you identified in your April 12, email, that will include anything "new."

Finally, I wanted to touch base as to the status of your rolling production and start discussing timeframes for depositions. I would also like to get the inspections scheduled ASAP.

With respect to depositions, we agreed that we would aim to schedule fact depositions in June. Please note that we have our firm retreat in DC the week of June 20, but are otherwise largely available. If we want to tentatively hold some dates in June, I think that would be a good idea. Assuming the document productions are complete UMI agrees we can begin scheduling fact depositions in June.

With respect to inspections, we both agreed to exchange detailed information regarding the inspections, including proposed attendees, what will be inspected and how testing will proceed. While the following is subject to amendment or supplementation based on comments received from Cormeum/Sensiva and/or its expert, in the interest of getting you something as soon as possible, I provide the following. I understand that you will be providing similar information with respect to UMI's inspection as well. I look forward to receiving that. I have forwarded the proposed inspection below to UMI and will let you know when I hear back from them regarding available dates and inspection protocols/parameters. We will provide similar information regarding UMI's inspection related to the LFDs UMI requested to inspect.

We anticipate that the following persons will attend the inspection: (1) our expert; (2) counsel for Cormeum/Sensiva; and (3) a client representative. We will inspect the following:
(1) The manufacturing facility allegedly located in Fresno, CA (the purpose of this is to confirm that the facility exists in Fresno, CA and has the capacity to produce the LFDs and component parts thereof). This inspection will include an inspection of the facility, equipment, processes and procedures. More particularly, it will include, but is not limited to, inspection of the following:

- Bio Reactors or adequate equipment to create antibody pairs / chemistry
- Coating and striping equipment and corresponding production line
- Liquid filling equipment and production line for buffer
- Assembly production line (manual and/or automated)
- Foil pack sealing equipment and corresponding production line
- Inkjet equipment for expiration date and corresponding production line
- Carton packing and kit packing equipment and corresponding production line
- QA / QC laboratory
- Research and development laboratory (referenced in BW visit)
- Quality control system and all documentation (this documentation is required to be on site)
    - Recall plan for bad product - this documentation is required to be available in writing prior to production

(2) The lab facility allegedly located in Fresno, CA (the purpose of this is to confirm that it exists in Fresno, CA and has the capacity to test the LFDs and component parts thereof). This inspection will include an inspection of the facility, equipment, processes and procedures. More particularly, it will include, but is not limited to, inspection of the following:

- Qualify control testing equipment for each batch
- Freezers to hold positive controls
- All equipment required to make small batches of product for testing purposes, including, but not limited to, a manual striping / coating process and corresponding equipment in addition to a manual nitrocellulose board cutter.
- QA/QC logs date stamped in connection with each batch sent to or otherwise intended for Cormeum and/or Sensiva

(3) All product allegedly created for Cormeum/Sensiva (the purpose of this is to confirm that it is all there, i.e., that it was produced and not sold or otherwise disposed of). For the avoidance of doubt, this includes the entirety of the LFDs that were the subject of the Purchase Order and that UMI is alleging damages in connection with.
(4) Any and all product sent to Cormeum/Sensiva.
(5) In addition to visual inspection, we reserve our right to conduct random testing of the product set forth in (3) and (4). If we decide to do so, we will provide a protocol, but at this time do not intend to proceed with testing. Pursuant to our call on Tuesday you stated that Sensiva did not intend to proceed with testing. If this changes, as stated during out call, UMI will require that an agreed inspection protocol be put in place well in advance of the test and that your document production be complete as also discussed during the call.

I understand that you plan to discuss the attendees and confidentiality issues with your client, but based on our call, I understand that you do not have an issue with anything that we intend to inspect. Please let me know right away if that is not the case and if you do object to the scope of the inspection for some reason. I am confirming with UMI that they do not have any objections to the scope of the inspection set forth in the email.
I look forward to hearing your response regarding the confidentiality issue and I will communicate our response as soon as we receive your proposed details regarding participants and scope of inspection (similar to what I have set forth

above). But, based on my current understanding of what you plan to inspect, we believe that the protective order is sufficient so long as our respective clients understand that any information obtained through the inspections is solely for purposes of this litigation and cannot be used for any other purposes (e.g., business purposes).

With respect to the timing of the inspection, we would like to conduct our inspections as soon as possible. As we discussed, it is important that we are able to conduct the inspections well in advance of our expert report deadline as the inspection will be an important component of our expert's opinion. I understand that it is your position that you object to any inspections proceeding until the document productions are complete. We disagree with this position and do not believe that the ongoing document productions by both parties should serve to delay the inspections which are independent of any documentation. You indicated that you have no issues at all further extending the expert report deadlines so as to allow time to complete the document productions and conduct the inspections in advance of the report deadlines. We would be agreeable to this but do have concerns regarding how it would impact other deadlines and whether the Court would be agreeable to this. As such, we will likely move to compel the inspections and alternatively move to continue the expert report deadlines pending the inspections. We would do this in a very friendly way, simply explaining that we cannot be jammed by a report deadline where we have not been able to conduct the necessary inspections. In the meantime, we have informally agreed that our expert reports will not be due until two weeks after the inspections take place. Please let me know immediately if this is not the case. This is moot based on the motion Sensiva filed.

If anything contained herein does not comport with your recollection of our discussion, please let me know.

Many thanks,

Lauren

**Lauren Courtney Mastio** | Partner
Jones Walker LLP
D: 504.582.8518 | M: 615.498.9745
lmastio@joneswalker.com