**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DR. TARUN JOLLY**<br><br>**VERSUS**<br><br>**COASTAL LABORATORIES, INC., BRITTON-HARR ENTERPRISES, INC. and PATRICK BRITTON-HARR** | **CIVIL ACTION NO.**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT (A) TO COLLECT AMOUNTS DUE UNDER PROMISSORY NOTE AND GUARANTY, AND (B) FOR RECOGNITION OF THE VALIDITY AND ENFORCEABILITY OF UCC FINANCING STATEMENT AND SECURITY INTERESTS**

This Complaint (a) to Collect Amounts Due under Promissory Note and Guaranty, and (b) for Recognition of the Validity and Enforceability of UCC Financing Statement and Security Interests (the "**Complaint**") is filed by Dr. Tarun Jolly, acting through undersigned counsel. In support thereof, Dr. Tarun Jolly alleges as follows:

**PARTIES**

1. The Plaintiff is Dr. Tarun Jolly ("**Dr. Jolly**" or "**Plaintiff**"), a person of the full age of majority, and a resident of Orleans Parish, Louisiana.

2. Made Defendant is Coastal Laboratories, Inc. ("**Coastal**"), a Delaware corporation with (on information and belief) its principal place of business in Delaware or Maryland.

3. Made Defendant is Britton-Harr Enterprises, Inc. ("**BHE**"), a Delaware corporation with (on information and belief) its principal place of business in Delaware or Maryland.

4. Made Defendant is Patrick Britton-Harr ("**Britton-Harr**"), an individual who, on information and belief, is domiciled in and a citizen of the State of Maryland.



Ex. 5 to UMI Opp. to Sensiva MIL

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

6. This Court has personal jurisdiction over all Defendants because the contractual relationship that is the subject of this lawsuit arises out of contacts that the Defendants themselves created with the forum state of Louisiana, and this dispute arises directly from those contacts. Specifically, the Defendants contacted Plaintiff inside the state of Louisiana for the purpose of borrowing from Plaintiff, a Louisiana resident, which contact led to the issuance of the Promissory Note that is sued upon herein. Further, certain property that is secured by the UCC Financing Statement at issue herein is located in Louisiana, and Defendant Britton-Harr has personally traveled to Louisiana to meet with Plaintiff for the purposes of discussing and negotiating the agreements at issue in this proceeding. Further, the Promissory Note and Guaranty between the parties called for performance in the State of Louisiana, and the Defendants purposefully availed themselves of the benefits of doing business in the State of Louisiana by contracting to have payments sent to the State of Louisiana. Finally, Defendant Britton-Harr directed his tortious conduct towards the State of Louisiana and knew that the damages stemming from said conduct would be felt in the State of Louisiana by a Louisiana citizen.

7. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims brought in this action occurred in this district, as discussed in Paragraph 6.

## GENERAL ALLEGATIONS

**1. The Note and Agreement.**

8. Dr. Jolly is party to that certain Membership Interest Purchase Agreement (the "**Agreement**"), dated March 18, 2020, executed by Britton-Harr on behalf of Coastal in favor of Dr. Jolly with the stated purchase price of $3,000,000. A copy of the Agreement is attached hereto as **Exhibit 1**.

9. Dr. Jolly is the holder of that certain Secured Promissory Note and Pledge Agreement (the "**Note**"), dated March 18, 2020, executed by Britton-Harr on behalf of Coastal in connection with the consummation of the Agreement and the transactions contemplated thereby, and in favor of Dr. Jolly, in the original principal amount of $3,000,000. A copy of the Note is attached as Exhibit A to Exhibit 1, Agreement.

10. Pursuant to the terms of the Note, Coastal makes a series of representations, warranties, covenants and agreements to and in favor of Dr. Jolly, including (a) representing and warranting to Dr. Jolly that Coastal's "…notice address that is stated in the Purchase Agreement is its mailing address and the location where records concerning the Collateral are and *will remain* kept…", and (b) covenants and agreements that, until payment in full of all amounts owed under the Note and Agreement is made, Coastal shall, among other things, (1) ensure that all Principal, interest and any other amounts payable are duly and punctually paid; (2) at the time of Coastal's first knowledge of an Event of Default, as defined in the Note, furnish Dr. Jolly with prompt written notice of the occurrence of any such event or condition; (3) promptly notify Dr. Jolly of the occurrence of any event or the discovery of any information known to Coastal which could reasonably be expected to have a materially adverse effect on the business, operations or financial condition of Coastal or the ability of Coastal to perform its obligations under the Note; and (4)

deliver sworn balance sheets and related statements of income and cash flow of Coastal and the Companies (as defined therein) to Dr. Jolly. *See* Exhibit 1, Exh. A, ¶ 11 and 12.

11. Coastal further covenants and agrees pursuant to the terms of the Note that it shall "not…dispose or otherwise transfer any of its material assets or any of the Lab Businesses or the Companies' respective material assets, in each case whether now owned or hereafter acquired, except (i) any security interest in favor of Holder, and (ii) any liens by operation of law with respect to taxes that are not yet due and payable…" (together with additional representations, warranties, covenants and agreements made by Coastal in the Note, the "**Covenants**"). *See* Exhibit 1, Exh. A, ¶ 12(g).

12. The Note is payable in monthly installments (the "**Monthly Installments**") on the fifteenth (15th) day of each month during the term of the Note commencing on April 1, 2020, in an aggregate amount equal to twenty-five percent (25%) of the Gross Collections[1] for such prior month, with one final balloon payment equal to all then outstanding Principal and accrued unpaid interest thereon due on the maturity date, regardless of the Gross Collections for the month prior to such maturity date.

13. The Note matures on the earlier of (1) the occurrence or existence of an Event of Default, as defined in the Note; or (2) the first anniversary of the Note, March 18, 2021.

14. The Note provides for interest on the unpaid principal balance of the Note, equal to the highest target Federal Funds Rate as published by the Federal Reserve Bank of New York (the "**FFR**") in effect on the date of the Note and from time to time on the first day of each calendar

[1] "Gross Collections," as defined in the Note, means the total receipts and other amounts generated in respect of the operations of the Lab Businesses, as defined in the Agreement, (without taking into account any write-offs, costs, expenses, taxes or other deductions) for the applicable month, determined on a consistent basis with prior periods. Gross Collections, accordingly, encompasses any and all revenue, receipts or other amounts generated by the Lab Businesses.

quarter (January, April, July and September) as applicable. The FFR in effect as of the date of execution of the Note was 1.75% per annum.

15. The Note also provides for payment of reasonable attorneys' fees to Dr. Jolly if the Note is referred to any attorney for collection or if any suit is filed to collect the Note ("**Attorneys' Fees**").

16. The current, remaining balance of the Note is $3,000,000 in principal, plus all interest that has accrued and continues to accrue.

**2. The Security Agreement**

17. The Note, including the payment and performance in full of all of the obligations of Coastal thereunder, is secured by, among other things, all assets of Coastal and the Companies (the "**Collateral**") and as reflected in that certain UCC Financing Statement (the "**Financing Statement**") in favor of Dr. Jolly. A copy of the Financing Statement is attached as **Exhibit 2.**

18. The Financing Statement was filed on March 19, 2020, at File No. 2020 2031567 with the Delaware Secretary of State.

19. Dr. Jolly seeks a Judgment that recognizes the validity and enforceability of security interests in the Collateral and Financing Statement.

**3. The BHE Guaranty.**

20. The Agreement and the Note are each unconditionally and irrevocably guaranteed by BHE pursuant to that certain Guaranty, dated March 18, 2020, respectively, executed by Britton-Harr on behalf of BHE (the "**Guarantor**") in favor of Dr. Jolly. *See* Exhibit 1, Agreement § 4.12; Exhibit 1, Exh. A, ¶ 22. As part of its provision of the Guaranty to Dr. Jolly by the Guarantor, the Guarantor "…acknowledges and agrees [that] the Guaranty is a guarantee of

payment and performance and not of collectability only and that [Dr. Jolly] therefore need not pursue rights and remedies against Purchaser prior to enforcing the Guaranty." *Id.*

21. Pursuant to that certain Certificate of President & CEO Of Britton-Harr Enterprises, Inc. (the "**Guarantor Certificate**"), Britton-Harr certified personally, and in his individual capacity that, among other things,

> "(a) The fair saleable value of the assets of Guarantor exceeds the amount that will be required to be paid on or in respect of the its existing debts and other liabilities…, (c) the current cash flow of Guarantor, together with the proceeds Guarantor would receive were it to liquidate all of its assets, and after taking into account all anticipated uses of the cash, are (and at all times, shall remain) sufficient to (i) pay all amounts on or in respect of its debt when such amounts are required to be paid…, and (d) Guarantor shall not, directly or indirectly, take any action that would impair its ability to (i) pay its debts from time to time as such debts mature, or (ii) satisfy and timely perform its obligations pursuant to the Guaranty, including without limitation, guarantee to Seller the timely payment and performance by Purchaser of its covenants, agreements and other obligations set forth in the Purchase Agreement (including without limitation, payment of the Purchase Price pursuant to the Promissory Note)."

A copy of the Guarantor Certificate is attached as Exhibit D to Exhibit 1, Agreement.

22. Britton-Harr, on behalf of guarantor BHE, further certified that he understood that Dr. Jolly was "relying on the truth and accuracy of the foregoing in connection with the execution and delivery of the Transaction Documents and the consummation of the transactions contemplated therein." *Id.*

**4. The Events of Default.**

23. Pursuant to the Note, a series of specifically delineated actions and/or inactions independently constitute "Events of Default" thereunder, including without limitation, (1) Maker defaults in the payment of Principal, interest or any other amount under the Note when due (whether at stated maturity or upon acceleration) and such default shall have continued unremedied

for three (3) days, (2) any representation or warranty made by Coastal under the Note or the Agreement or any certificate, exhibit or other document required thereunder is false, misleading, incomplete or untrue in any material respect, (3) Maker transfers possession of or otherwise disposes of Material assets that are Collateral and (4) any covenant, term, agreement or condition contained in the Note or the Purchase Agreement is breached by Maker.

24. Through its actions and/or inactions, Coastal has triggered several independent "Events of Default" under the terms of the Note and Agreement including, among other things, a material breach of certain Covenants made by Coastal under the Note, Agreement, and corollary documents. As a result, BHE is subject to enforcement of the Guaranty, as referenced above in Subpart 3.

25. Specifically, Coastal has (1) failed to make payments on the Note, and on information and belief, has (2) transferred material assets, including furniture, fixtures, and equipment, of the Lab Businesses and/or the Companies, as defined in the Note, to GTI Laboratories and/or other third parties.[2] Moreover, Coastal has (3) failed to keep records concerning the Collateral as required, (4) failed to provide prompt written notice of any and all events of default, (5) failed to timely permit inspection of the required books and records, and (6) failed to notify Dr. Jolly of events that could result in a material adverse effect on the business, operations or financial condition of Coastal or the Companies, (the "**Events of Default**"). *See* Exhibit 1, Exh. A, ¶ 12. These Events of Default are incapable of cure.

26. At this time, principal in the amount of $3,000,000 and all accrued interest remain unpaid, due, and owing on the Note. In addition, Dr. Jolly is entitled to Attorneys' Fees and all costs of these proceedings.

---

[2] The transferred assets comprise Collateral under the Note and the Financing Statement.

**COUNT ONE AGAINST COASTAL: THE NOTE**

27. Dr. Jolly re-alleges the allegations contained in Paragraphs 1 through 26 of this Complaint as if the same were restated herein.

28. Based on the Events of Default, Dr. Jolly is entitled to a Judgment against Coastal, the maker of the Note and Agreement, for the full amount due on the Note, including (a) principal, (b) interest at the rate specified in the Note until paid in full, (c) Dr. Jolly's reasonable Attorneys' Fees, and (d) all costs of these proceedings.

**COUNT TWO AGAINST COASTAL: RECOGNIZING THE VALIDITY OF THE SECURITY INTERESTS**

29. Dr. Jolly re-alleges the allegations contained in Paragraphs 1 through 28 of this Complaint as if the same were restated herein.

30. Dr. Jolly seeks a Judgment that recognizes the validity and enforceability of security interests in the Collateral and corresponding Financing Statement to secure the Note and the Judgment to be rendered herein.

**COUNT THREE AGAINST BHE AND BRITTON-HARR: THE GUARANTY**

31. Dr. Jolly re-alleges the allegations contained in Paragraphs 1 through 30 of this Complaint as if the same were restated herein.

32. Under the terms of the Agreement and the Note, the Guaranty is a guarantee of performance and payment and not of collectability only such that Dr. Jolly need not pursue any rights or remedies against Coastal prior to bringing an action to enforce the Guaranty. Exhibit 1, Agreement § 4.12; Exhibit 1, Exh. A, ¶ 22.

33. Based on the foregoing breaches, Dr. Jolly is entitled to a Judgment against BHE in an amount equal to the balance due on the Note, including, but not limited to, (a) principal, (b)

interest at the rate specified in the Note until paid in full, (c) Dr. Jolly's reasonable Attorneys' Fees, and (d) all costs of these proceedings.

34. In light of the following, Dr. Jolly is also entitled to a Judgment against Britton-Harr personally in an amount equal to the balance due on the Note, including, but not limited to, (a) principal, (b) interest at the rate specified in the Note until paid in full, (c) Dr. Jolly's reasonable Attorneys' Fees, and (d) all costs of these proceedings:

35. At all relevant times, Defendant Britton-Harr—the Executive Director and CEO of both Coastal and the President and CEO of BHE—used Coastal and BHE as his "alter-egos," and practiced fraud and/or deceit on Plaintiff while acting through Coastal and BHE.

36. At all relevant times, Britton-Harr disregarded the requisite corporate formalities of Coastal and BHE to the extent that those corporations ceased to be distinguishable from him. Specifically, at all relevant times, Britton-Harr engaged in the following with respect to Coastal and BHE: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings.

**COUNT FOUR AGAINST BRITTON-HARR – FRAUDULENT INDUCEMENT**

37. Dr. Jolly re-alleges the allegations contained in Paragraphs 1 through 36 of this Complaint as if the same were restated herein.

38. On the date that Britton-Harr executed the "Certificate of President & CEO of Britton-Harr Enterprises, Inc." (included in Exh. 1), Britton-Harr intentionally made knowingly false and/or deceptive certifications in Paragraph 2 of said Certificate for the purposes of inducing Plaintiff (whom Britton-Harr knew to be a citizen of Louisiana) into entering into the Agreement

and issuing the Note. These false and/or deceptive certifications include representations (a) – (d)(ii) in Paragraph 2 of said Certificate, which are all incorporated herein.

39. Britton-Harr further certified in Paragraph 3 of said Certificate that "I understand that you are relying on the truth and accuracy of the foregoing in connection with the execution and delivery of the Transaction documents and the consummation of the transaction contemplated here."

40. Plaintiff relied on these representations to his detriment, without which Plaintiff would not have entered into said transaction.

41. Representations (a) – (d)(ii) in Paragraph 2 of said Certificate, on information and belief, turned out to be false, and Britton-Harr knew that they were false at the time he made them.

42. Plaintiff has suffered damages in light of his reliance on the fraudulent and/or deceptive representations (a) – (d)(ii) in Paragraph 2 of said Certificate.

**COUNT FIVE AGAINST COASTAL: AVOIDANCE AND RECOVERY OF TRANSFERS PURSUANT TO 6 Del. C. §§ 1304(a) & 1305(a)**

43. Dr. Jolly re-alleges the allegations contained in Paragraphs 1 through 42 of this Complaint as if the same were restated herein.

44. Pursuant to the Agreement and Note, and at all times material hereto, Coastal had at least one creditor – Dr. Jolly – prior to making the above-described Fraudulent Transfer.

45. After Coastal obligated itself to Dr. Jolly under the Agreement and Note, Coastal made the above-described Fraudulent Transfer of Assets to GTI Laboratory.

46. At all times material hereto, Coastal was insolvent, or was rendered insolvent as a result of the Fraudulent Transfer, had unreasonably small capital, and/or had incurred (or intended to incur) debts beyond their ability to pay as such debts matured.

47. Coastal did not receive reasonably equivalent value in exchange for the Fraudulent Transfer.

48. Coastal made the Fraudulent Transfer with the actual intent to hinder, delay, and/or defraud its creditors, including Dr. Jolly.

49. Accordingly, the Fraudulent Transfer constitutes an avoidable fraudulent transfer pursuant to 6 Del. C. §§ 1304(a) and 1305(a).

## PRAYER

**WHEREFORE**, Dr. Jolly prays that the Defendants, Coastal, Britton-Harr and BHE, be served with copies of this Complaint and be cited to appear and answer it, and, after due proceedings had, there be Judgment rendered in favor of Dr. Jolly and against Coastal, Britton-Harr and BHE, as follows: (a) unpaid principal in the amount of $3,000,000; (b) interest at the rate specified in the Note until paid in full, (c) Dr. Jolly's reasonable Attorneys' Fees, and (d) all costs of these proceedings. Dr. Jolly further seeks a Judgment that recognizes the validity and enforceability of security interests in the Collateral and corresponding Financing Statement to secure the Note. Finally, Dr. Jolly seeks such other relief as is just and equitable.

Respectfully submitted,

*/s/Laura Ashley*
TARAK ANADA (#31598)
LAURA ASHLEY (#32820)
MADISON TUCKER (#37722)
TAYLOR WIMBERLY (#38942)
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8322
Facsimile: (504) 589-8322
E-Mail: tanada@joneswaker.com
lashley@joneswalker.com
mtucker@joneswalker.com
twimberly@joneswalker.com

*Attorneys for Plaintiff Dr. Tarun Jolly*