**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

SENSIVA HEALTH, L.L.C., ET AL.                    CIVIL ACTION

VERSUS                                            NUMBER:  21-598

UNIVERSAL MEDITECH, INC., ET AL.                  SECTION: "T" (5)

<u>**REPORT AND RECOMMENDATION**</u>

On November 9, 2022, the Court held a hearing at Tulane University School of Law on its previously issued rule to show cause why Defendant, Universal Meditech, Inc. ("UMI"), should not be sanctioned for failing to comply with a number of this Court's prior discovery orders.  Present were Tarak Anada on behalf of Plaintiffs ("Sensiva" or "Plaintiffs") and Raymond Lewis and Robert Kerrigan on behalf of UMI.[1]

The parties naturally disagree as to what this case is "about."  Sensiva says it is about UMI's failure to provide COVID-19 Lateral Flow Devices ("LFDs" or "test kits") in accordance with the parties' agreement and the latter's representations.  (Rec. doc. 91-1).  In contrast, UMI suggests that the case is about Sensiva's agreeing to purchase 700,000 LFDs from UMI in January 2021 but backing out of the deal at the last minute after locating a cheaper source for the product in China.  (Rec. doc. 104).

The events that ultimately precipitated this Report and Recommendation began in June of 2022, when Sensiva filed a motion to compel an inspection of the manufacturing and laboratory facilities at which UMI's test kits were allegedly made and/or tested.  (Rec. doc. 91).  Well before the Court could rule on that motion – the very day after the filing, actually

---

[1] Linda Griffin – of Professional Shorthand Reporters, Inc. – was the court reporter for the oral hearing and compensated by the Federal Bar Association, the organizer of the oral hearings at Tulane.

MJSTAR(00:19)

– UMI filed a motion to substitute counsel (rec. doc. 95), which was granted shortly thereafter.  (Rec. doc. 98).

New counsel opposed the motion to compel.  (Rec. doc. 104).  The Court granted the motion, its reasoning made apparent here:

> As recently as April and May 2022, counsel for the parties were discussing – in detail – the parameters of the very inspection Defendants now claim is irrelevant and disproportionate to the needs of the case.  The record reflects that Defendants' prior counsel and Plaintiff's counsel had agreed that an inspection would take place and it further reflects that, until Defendant substituted in new counsel, Defendant had never objected to the requested inspection on the grounds it now argues in its opposition memorandum. (*See, e.g.,* Rec. doc. 91-3).  This is commonly known as waiver.  While the Court can appreciate that certain matters may initially fall through the cracks when new counsel is called upon to respond to a pending motion immediately upon being brought into a case, that is no excuse here, because the motion itself spells out in granular detail the prior discussions between counsel aimed at accomplishing the subject inspection.  The Court does not appreciate defense counsel pretending in their opposition memorandum that these discussions never took place and failing entirely to explain to the Court why they should be ignored. Defendants are bound by their actions taken before the change in attorneys; ruling otherwise would sanction a discovery tactic that would surely and inevitably violate Rule 1 of the Rules of Federal Civil Procedure, which directs that those rules are to be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

(Rec. doc. 109).

There then followed a protracted disagreement about the timing and format of the inspection ordered by the Court.  After multiple telephone status conferences, this Court directed that

> [t]he inspection shall take place no later than July 8, 2022 and may be photographed and/or videotaped, subject to the

> protective order in the case.  The inspection may be conducted
> and attended by counsel and their designated experts only.

(Rec. doc. 113).

Although not in the record, the Court was contacted twice <u>during</u> the inspection by counsel for UMI expressing UMI's objections to Sensiva videotaping certain areas of the facility – despite this Court's order that the entire inspection could be videotaped.  The Court dismissed those objections and reiterated that Sensiva could videotape any area of the facility during the inspection.  This episode is notable only because it was a harbinger of UMI's regard for this Court's orders.

Following the aforementioned inspection, on August 17, 2022, this Court granted, as <u>unopposed,</u> Plaintiffs' Motion to Compel Responses to Interrogatories and Production of Documents (Rec. doc. 132) and ordered UMI to respond to Plaintiffs' Third Set of Interrogatories and Production of Documents in full and in writing and without objections – except for those based on a privilege – no later than 10 days from the date of the order.  (Rec. doc. 137) (the "August 17 Order").  The deadline for compliance was August 29, 2022.

On August 31, 2022, the Court granted a second <u>unopposed</u> Motion to Compel Responses to Interrogatories and Production of Documents (Rec. doc. 133) and ordered UMI to respond to Plaintiffs' First, Second, and Fourth Sets of Interrogatories and Production of Documents in full and in writing and without objections – except those based on a privilege – no later than 10 days from the date of the order.  (Rec. doc. 151).  That same day, this Court issued an order on a <u>fourth</u> discovery motion filed by Sensiva, Plaintiffs' Motion to Compel Depositions and Rule 37 Request for Attorney's Fees (Rec. doc. 138)[2], stating

---

[2] This was the fourth discovery motion filed by Plaintiffs in a three-month period.

[t]he aggressive practice in this case needs to end immediately. The present motion is entirely unnecessary and is clearly the result of counsel's animosity toward each other. The Court doesn't care if counsel like each other, but it does care that discovery in this case is going off the rails because of it. The requested depositions should be scheduled and completed no later than September 30, 2022. The next time this Court is forced to rule on a discovery dispute that could have been avoided by cooperation between counsel, sanctions will be awarded against the responsible party or parties.

(Rec. doc. 152).

On August 30, 2022, prior to the above-quoted admonition, Sensiva had filed a motion for contempt, arguing that UMI's responses provided in response to the Court's August 17 Order were improper for two overriding reasons: (1) they contained objections in violation of the Order and (2) they merely promised "rolling" productions, rather than comprising the full production ordered by the Court. (Rec. doc. 150). This motion was set for submission on September 14, 2022, making UMI's response memorandum due on September 6, 2022.

True to form, UMI failed to file a response to the motion for contempt which might have explained its failure(s) to comply with the Court's August 17 Order. The Court then ordered UMI to file such a response, albeit a late one. (Rec. doc. 155). In that Order, the Court warned UMI directly:

> Defendant, UMI, is at serious risk of sanctions, not only for its apparent failure to comply with the Court's August 17, 2022 Order, but for failing to file a response to, not one, but two separate discovery motions. (Rec. docs. 132 and 150). UMI's response shall address its apparent disdain for addressing matters properly raised in motions filed before the Court directed at its alleged discovery misconduct.

(*Id.*).

Before the Court could schedule a hearing on the pending motion for contempt, Sensiva filed a second motion for contempt related to this Court's August 31 Order granting

Sensiva's third (unopposed) motion to compel, citing the same deficiencies in UMI's responses as it had cited in its first motion for contempt.  (Rec. doc. 159).

On September 28, 2022, the Court held an oral hearing on both of Plaintiffs' contempt motions (Rec. docs. 150, 159), and a related Motion for Attorney Fees filed by Sensiva.  (Rec. doc. 161).

This Court ordered the following:

- that UMI supplement its responses to Plaintiffs' interrogatories and requests for production;

- that Plaintiffs were permitted to re-depose UMI's witnesses during the extended discovery period for the limited purpose of addressing any supplemental productions/responses made after the date of the hearing;

- that any such supplemental productions/responses/information could not be used by any Defendant (including UMI) to counter any dispositive or other motions filed by Plaintiffs on or before the September 28, 2022 motions deadline;

- that Plaintiffs could reserve their right to seek leave to file an out-of-time motion for adverse inferences regarding any discovery requests to which UMI never responded and that would support Plaintiffs' claims and defenses, such as Plaintiffs' discovery requests for UMI's Quality Control Procedure Documentation; and

- that Defendants could oppose any motion for an adverse inference,
  but they could not oppose Plaintiffs' motion for leave to file such a
  motion out of time.

(Rec. doc. 168).

Most important for purposes of this Report and Recommendation, the Court further
ordered

- that the work-related computers, email systems, and the platforms,
  such as Baidu and What's App, used by Zhaoyan (Yan) Wang and
  Zhaolin Wang who were recently deposed, be searched according
  to the ESI protocol currently in place (as outlined in Defendants'
  email to this Court dated September 29, 2022) and

- that the terms "Aide Biopharmaceuticals" and "Guangdi Packaging
  Material Company" be added to the list of search terms to be used
  in the ESI protocol.

(*Id.*).

The search was to be completed no later than two (2) weeks from the date of the
Minute Entry, and the results were to be produced to Plaintiffs no later than October 14,
2022. (*Id.*).

On October 14, 2022 (the day the production was to be made), UMI's counsel
requested a seven-day extension to comply, which the Court granted. Then, on October 21,
2022 – the new deadline for production – UMI's counsel emailed the Court and opposing
counsel, stating: "As a courtesy to the Court and parties, I write to let Judge North know that

UMI will be unable to respond to the Court's order dated September 28, 2022." (Rec. doc. 191). Counsel requested a status conference, to which Sensiva's counsel agreed.

On October 24, 2022, this Court held that status conference and ordered:

Following an informal request by UMI for a one-week extension to complete the production ordered above, the Court granted that request and gave UMI a deadline of October 21, 2022. On October 21 – the day the production was to be made – counsel for UMI informed the Court and Plaintiff's counsel that UMI would be "unable" to complete the production as ordered, giving no reason or explanation for said inability. The Court ordered a status conference to inquire of UMI's counsel and is not satisfied that any acceptable explanation for UMI's failure to comply with the Court's orders has been proffered.

Accordingly, UMI and its counsel shall appear in the undersigned's courtroom at 11:00 a.m. on Thursday, November 3, 2022 to show cause why UMI should not be sanctioned for its repeated non-compliance with the Federal Rules of Civil Procedure and this Court's orders. <u>The Court will consider every available sanction, up to and including the recommendation of dispositive sanctions to the District Judge.</u> A representative of UMI who can knowledgably explain the Defendants' failures in this regard shall personally attend the hearing.

(Rec. doc. 176) (emphasis added). The Court later changed the date for the show cause hearing to November 9, 2022. (Rec. doc. 182).

It is painfully apparent to the Court that UMI has intentionally ignored these orders. UMI's counsel represented at the oral hearing that he advised his client directly of both of the Court's orders (of September 28, 2022 and October 24, 2022), the requirement for client attendance at the hearing, and the potentially dispositive consequences for violating these orders. Counsel advised the Court that his client contact had changed before the hearing on the Rule to Show Cause and that he does not currently know who the new contact is or where that person is currently located. He also advised the Court that, not only had UMI not made any production by the Court-ordered deadline of October 21, 2022, but, to his knowledge, UMI had not even <u>begun</u> the email search ordered by the Court more than six weeks ago. He could provide no explanation for his client's intransigence in this regard.

Compounding these failures, a corporate representative of UMI failed to appear at the show-cause hearing as ordered. (Rec. doc. 176). Counsel could provide no explanation for that non-appearance but assured the Court that the client had been informed of the requirement that a client representative appear personally.

The Court cannot help but conclude under the circumstances that this misconduct is intentional and that it demonstrates an outright dismissal of this Court's authority – authority that UMI itself has invoked by filing counterclaims against Plaintiffs. For his part, Plaintiffs' counsel expressed understandable frustration and his clients' belief that the case cannot proceed "on a level playing field" given that UMI – the client and not its attorneys – has simply decided to stop participating in this litigation (in which it actively asserted counterclaims against Plaintiffs). Forget the level playing field – the Court concludes this case cannot proceed at all when one of the parties routinely and intentionally ignores the rules and violates this Court's orders.

This Court has warned UMI that it would not hesitate to impose (or recommend) the harshest of sanctions for its contumacious indifference to this Court's orders. There are a number of mechanisms by which district courts exercise sanction powers, including the Federal Rules of Civil Procedure (through Rules 11, 26, 30, and/or 37); 28 U.S.C. § 1927; and the inherent power of the courts to manage their own proceedings and to control the conduct of those who appear before them. Regardless of the source, it is widely accepted that the primary purpose of sanctions is to deter frivolous litigation and abusive tactics. *Kidwell v. Ruby IV, L.L.C.*, No. CV 18-02052, 2020 WL 6391260, at *5-6 (E.D. La. Nov. 2, 2020); Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 47(A) (2d ed.) (the purpose of Rule 37 is four-fold: "(1) penalizing the culpable party or attorney; (2) deterring others from

8

engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery"); *Id.* at § 20 (the purpose of 28 U.S.C. § 1927 is to deter unnecessary delays in litigation).

Whether a court wields its sanction powers under the Federal Rules, 28 U.S.C. § 1927, or its inherent power, it does so at its "broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993). "The discretion vested in the trial court is granted so its thoughtful exercise will carry out the educational and deterrent functions of the rule." *Jennings v. Joshua I.S.D.*, 948 F.2d 194, 199 (5th Cir. 1991). When imposing a sanction, the Court should strive to determine the least severe sanction adequate to serve the deterrent purpose of the sanctioning regime. *See Thompson v. Capital Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988).

In the present matter, the Court finds that Rule 37 and the cases interpreting its sanctions provisions provide the rule of decision. Rule 37(b)(2) provides in relevant part:

> (2) Sanctions Sought in the District Where the Action Is Pending.
>> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—a or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>>> (i) <u>directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;</u>
>>> (ii) <u>prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;</u>
>>> (iii) striking pleadings in whole or in part;
>>> (iv) staying further proceedings until the order is obeyed;
>>> (v) <u>dismissing the action or proceeding in whole or in part;</u>
>>> (vi) <u>rendering a default judgment against the disobedient party;</u> or
>>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

> Fed. R. Civ. P. 37(b)(2) (emphasis added).

As noted above, this Court has warned UMI on numerous occasions of the potential consequences of its failure to comply with this Court's orders. Most recently, in the order setting this matter for hearing and requiring a client representative to attend, the Court warned UMI that it would consider recommending dispositive sanctions for UMI's <u>previous</u> violations. (Rec. doc. 176). Not only was counsel unable to explain UMI's failure to even begin compliance with the Court's previous order, no one from UMI showed up after being ordered to do so.

Ample Fifth Circuit precedent holds that the dispositive and draconian remedy of dismissal of an affirmative defense or entry of a default judgment as a sanction is reserved exclusively for clear records of contumacious and continuing discovery misconduct or delay, ordinarily involving stubborn resistance to authority by failure to comply with multiple court orders. *See, e.g., Doe v. Am. Airlines*, 283 F. App'x 289,291 (5th Cir. 2008); *Davis v. Auto Club Family Ins. Co.*, No. 07-8545, 2008 WL 5110619, at *1 (E.D. La. Dec. 2, 2008) (citing *Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1381 (5th Cir. 1994)); *Equal Emp't Opportunity Comm'n v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 51t 515 (5th Cir. 1985)).

"[I]t is not a party's negligence – regardless of how careless, inconsiderate, or understandably exasperating – that makes conduct contumacious; instead it is the stubborn resistance to authority which justifies a dismissal with prejudice" of a claim or other dispositive sanction. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quoting *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988)) (internal quotation omitted).

After thorough consideration of the entire record, the law, and the argument of counsel, I find here that UMI has engaged in contumacious and continuing discovery

misconduct and has wilfully violated multiple orders of this Court.  This misconduct demonstrates a stubborn resistance to the Court's authority and justifies the most severe sanction available.  The Court has closely considered less severe alternatives and finds that nothing short of entry of default can or will adequately address UMI's intentional and ongoing misconduct and its refusal to participate in this litigation (in which the discovery deadline passed over a month ago).  This conclusion is reinforced by UMI's considered decision not to attend the show-cause hearing to explain its multiple prior violations.  Given the opportunity to explain itself and avoid the harshest of sanctions – and directly warned by its own counsel and this Court of the adverse consequences – this litigant knowingly ignored that opportunity and, in the process, intentionally flouted this Court's authority.  Accordingly,

**IT IS RECOMMENDED** that the District Court grant default judgment against UMI and strike its counterclaims against Plaintiffs.  Fed. R. Civ. P. 37(b)(2)(vi).

**IT IS FURTHER RECOMMENDED** that the District Court schedule a hearing under Federal Rule of Civil Procedure 55 to determine damages, if any, due to Plaintiffs.  Fed. R. Civ. P. 55.

### NOTICE OF RIGHT TO OBJECT

Because this Court's Minute Entry is a Report and Recommendation, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences

will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __17th__ day of __November__, 2022.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE